The PEOPLE of the State of
Colorado, Complainant.

v.

Jack H. McQUITTY.

No. 15PDJ057.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

March 29, 2016.

Jack H. McQuitty ("Respondent") failed to pay court-ordered family and spousal support and failed to produce the required disclosures in his marriage dissolution case. The evidence does not show, however, that Respondent made a knowing misrepresentation on his 2014 attorney registration statement when he averred that he was not under any order requiring child support. Respondent's misconduct warrants suspension for one year and one day with certain conditions for early reinstatement.

**OPINION AND DECISION IMPOSING SANCTIONS UNDER C.R.C.P. 251.19(b)**

**I. PROCEDURAL HISTORY**

On July 13, 2015, Catherine S. Shea, Office of Attorney Regulation Counsel ("the Peo-

ple"), filed a complaint against Respondent, asserting seven claims for relief based on Colo. RPC 3.4(c), 8.4(c), and 8.4(d). Respondent answered the complaint on September 15, 2015, admitting a substantial number of the factual allegations. Presiding Disciplinary Judge William R. Lucero ("the PDJ") thereafter set the disciplinary hearing for February 9 and 10, 2016.

The People filed on December 16, 2015, a combined motion for judgment as a matter of law and for summary judgment on all claims in their complaint. On January 4, 2016, Respondent responded to the People's motion and filed a cross motion for summary judgment as to the People's Colo. RPC 8.4(c) charge.

On January 27, 2016, the PDJ determined as a matter of law that Respondent violated Claim I and Claim II of the complaint, which pleaded, respectively, violations of Colo. RPC 3.4(c) and 8.4(d). In that same order, the PDJ entered partial summary judgment in favor of the People, concluding that Respondent committed multiple violations of Colo. RPC 3.4(c) and Colo. RPC 8.4(d) as charged in Claims III, IV, V, and VI. The PDJ declined to grant summary judgment for either party as to Claim VII, finding that the undisputed facts did not establish as a matter of law whether Respondent violated Colo. RPC 8.4(c). The PDJ thereafter converted the two-day hearing to a one-day hearing on both the People's Colo. RPC 8.4(c) claim and the sanction for the six established rule violations.

On February 9, 2016, a Hearing Board comprising bar member Patrick J. McCarville, citizen member Felix W. Cook, and the PDJ held a hearing under C.R.C.P. 251.18. Shea represented the People, and Respondent appeared with counsel, Darren R. Cantor. During the hearing, the Hearing Board considered testimony from Marina McQuitty

and Respondent. The PDJ admitted stipulated exhibits S1–S6 and the People's exhibits 4–6.

## II. FINDINGS OF FACT AND RULE VIOLATIONS

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 22, 1998, under attorney registration number 29452.[1] He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this disciplinary proceeding.[2]

The Hearing Board finds that the following facts were established by clear and convincing evidence. Where not otherwise indicated, these facts are drawn from testimony provided at the hearing.

### Facts Established by Stipulation

Respondent and Marina McQuitty were married in 2003.[3] Thereafter, Respondent adopted Ms. McQuitty's two children from her prior marriage.[4] They also had one child of their own during the marriage.[5] The parties separated in 2013 and filed for divorce in El Paso County District Court case number 2013DR1329.[6]

On June 27, 2013, Respondent and Ms. McQuitty stipulated to the entry of an order for temporary family support.[7] Per the order, Respondent was to pay $3,500.00 monthly to Ms. McQuitty.[8] This order was unallocated, but a portion of the $3,500.00 was intended by the parties as child support.[9] The court adopted the parties' stipulation as the temporary orders of the court on July 24, 2013.[10] Respondent made the first payment in October 2013, paid $1,000.00 in November 2013, and then made no other payments,

1. Stip. Facts ¶ 1.

2. See C.R.C.P. 251.1(b).

3. Stip. Facts ¶ 3.

4. Stip. Facts ¶ 4.

5. Stip. Facts ¶ 4.

6. Stip. Facts ¶ 5.

7. Stip. Facts ¶ 6.

8. Stip. Facts ¶ 4; see Ex. 6.

9. Stip. Facts ¶ 7.

10. Stip. Facts ¶ 8.

resulting in an arrearage.[11] On February 26, 2014, the court placed Respondent's unpaid family support arrearage on hold pending final orders.[12]

On March 3, 2014, Respondent completed his 2014 attorney registration statement on-line.[13] In response to the question of whether he was currently under an order requiring the payment of child support, Respondent answered "no."[14] The Hearing Board does not have evidence of the specific wording of this question. At the time he completed the form, Respondent was required to comply with the court's unallocated temporary family support order.[15]

Ms. McQuitty filed a contempt motion on April 15, 2014, based upon Respondent's unpaid family support obligations and his failure to comply with his disclosure obligations under C.R.C.P. 16.2(e), including his failure to disclose financial information related to his law practice.[16] The court held a hearing on the final orders and the contempt motion on August 7, 2014.[17]

On August 13, 2014, the district court entered a decree of dissolution and final orders.[18] In its final orders, the district court ordered Respondent to pay $7,562.00 per month in spousal maintenance and $234.00 per month in child support.[19] The court declined Respondent's request to relieve him of the temporary support obligation during the time Ms. McQuitty was out of Colorado from November 2013 to January 2014.[20] The court found Respondent's argument—that the family support money was intended to support the children—unpersuasive because the parties had declined to designate any portion of the temporary orders as child support.[21] The court entered judgment in favor of Ms. McQuitty in the amount of $30,500.00 plus interest for the family support arrearage.[22] In addition, the court found Respondent in contempt for his willful failure to pay the temporary family support[23] and for his failure to produce discovery materials. In so doing, the court determined that Respondent had "pursued a willful and intentional effort to obfuscate his finances" throughout the proceeding.[24]

The court held a sentencing hearing on its contempt ruling on November 12, 2014.[25] At that hearing, the court ordered Respondent to pay $740.00 per month for twenty-four months toward his then-current arrearage balance of $17,750.00. This payment was to be in addition to his monthly spousal maintenance and child support payments.[26] Respondent did not make the December 2014 arrearage payment.[27] He also has failed to make the full spousal maintenance monthly payment of $7,562.00 from August 2014 onward.[28]

On December 18, 2014, Respondent unsuccessfully moved to modify his spousal and child support obligations based on his changed financial circumstances.[29] In an order denying Respondent's motion, the district court found that Respondent's own testimony and financial records were not persuasive or credible.[30] The court thus

11. Stip. Facts ¶¶ 9–11.

12. Stip. Facts ¶ 12.

13. Stip. Facts ¶ 27.

14. Stip. Facts ¶ 28.

15. Stip. Facts ¶ 29.

16. Stip. Facts ¶ 17.

17. Stip. Facts ¶ 13.

18. Ex. S1; Stip. Facts ¶ 14.

19. Ex. S1 at 00048–49; Stip. Facts ¶ 15.

20. Ex. S1 at 00049; Ex. S6 at 00132.

21. Ex. S1 at 00049.

22. Ex. S1 at 00050; Stip. Facts ¶ 21.

23. Ex. S1 at 00050–51; Stip. Facts ¶ 20.

24. Ex. S1 at 00046, 00051; Stip. Facts ¶ 22.

25. Ex. S3; Stip. Facts ¶ 23.

26. Ex. S3; Stip. Facts ¶¶ 24–25.

27. Stip. Facts ¶ 26.

28. Stip. Facts ¶ 16; Ex. 4.

29. Ex. 5.

30. Ex. 5 at 4–6.

determined that Respondent failed to meet his burden of "demonstrating a substantial and continuing change to his income."[31] The court further found that Respondent had "consistently underpaid his financial obligations" to Ms. McQuitty by "approximately 70% each month," causing a substantial arrearage.[32]

Respondent paid the $17,750.00 arrearage balance on February 4, 2015, to purge the contempt finding.[33] He later appealed the child support provisions of the district court's final orders.[34] In his appeal, he argued that the district court abused its discretion when it declined to relieve him of his temporary family support arrearage during the approximately two-month period when Ms. McQuitty was out of Colorado and without the children.[35] On October 29, 2015, the Colorado Court of Appeals issued an unpublished opinion, ruling that the district court did not err in declining to apply the child support modification provisions of C.R.S. section 14–10–122 to reduce Respondent's temporary support arrearage when his ex-wife was out of the country.[36] The court reasoned that C.R.S. section 14–10–122 expressly applies to "the obligor's obligation under an 'existing child support order'" and that there was no such order here because the "parties had stipulated to unallocated family support."[37]

### Additional Findings Based on Testimony and Evidence

Respondent testified that he was raised in a small town in New Mexico, and he received his law degree from the University of New Mexico. After graduating, he moved to Colorado and obtained a graduate tax degree in the late 1990s. He has been licensed to practice law in Colorado since 1998. Respon-

dent's law practice has primarily focused on estate planning. Currently, Respondent is married and a father of four boys. Three of the children are from his union with Ms. McQuitty, and he has a fourth son with his current spouse.

Respondent testified that his earnings over the past few years have been unsteady. In 2013, Respondent was a partner in an estate planning firm with one other attorney. According to Respondent, the majority of the firm's clients came from his own referrals, yet he and his law partner equally shared the firm's earnings. He estimates that he likely grossed approximately $130,000.00 that year.

In late 2013, Respondent said that Ms. McQuitty—a Russian immigrant—abandoned their children and returned to Russia. He recalls picking up the boys from school and returning to his townhome only to find black trash bags filled with the children's belongings. After Ms. McQuitty left, the children lived with him for nearly four months. During this time, Respondent was solely responsible for the care of the children, including taking them to school and to activities. These new responsibilities affected his ability to practice law, he said, and as a result his income declined. He thinks that his income in 2014 totaled between $80,000.00 and $90,000.00.[38] In 2014, his law partnership dissolved because he and his partner had several disagreements about Respondent's ability to contribute fully. The firm also lost a major client.

After his law partnership ended, Respondent formed a sole proprietorship, but he said that it has taken him time to establish a regular income. He testified that although 2015 was a better year financially than 2014,

---

31. Ex. 5 at 8.

32. Ex. 5 at 10. The district court explained that since the final orders were entered, Respondent has regularly paid approximately $2,234.00 a month towards his total obligation of $7,796.00 and has a substantial arrearage. Ex. 5 at 10 n. 1.

33. Exs. S4–S5.

34. Ex. S6.

35. Ex. S6 at 00131.

36. Ex. S6 at 00132.

37. Ex. S6 at 00132.

38. Respondent declined to say for certain what his income was in 2013 and 2014 because he has yet to file his individual tax returns. According to Respondent, he and his former law partner are disputing their firm's finances and so have not filed their business tax returns for these years.

he only grossed around $110,000.00. Although he has consistently paid $234.00 in child support since August 2014, he has been unable to meet his monthly spousal support obligation during that period.[39] He has paid anywhere from $1,000.00 to $5,200.00 a month to partially satisfy this obligation.[40] He has not received the court's permission to reduce his spousal support obligation.[41] As a solo practitioner, Respondent testified, he has no significant funds remaining at the end of the month other than what he sets aside to pay his next month's rent and insurance.

In order to make his $7,562.00 monthly payment to Ms. McQuitty, he estimates that he would need to net about $12,000.00 per month. Respondent states that he has not made this type of income since opening a solo practice. In fact, he believes that no solo practitioner in the Colorado Springs area would be able to earn this much. Respondent stated that he is doing the best he can to satisfy his spousal-support obligation, however, including by borrowing money and discontinuing contributions to his retirement account. His current wife even helped him pay the $17,750.00 balance of his arrearage and is helping him satisfy his monthly spousal support obligations.[42] To date, Respondent has paid Ms. McQuitty about $72,000.00, but he still owes her more than $100,000.00 in arrearages.

Respondent testified that when he filled out his registration statement in 2014, he thought back to what the magistrate and his divorce attorney had told him: that the temporary family support order was neither a child support order nor a marital support order. Respondent took their commentary seriously, he said, when marking "no" on his statement. He testified that he was not trying to be misleading in answering the question. He believed that if he answered the question to the contrary, it would have been a misrepresentation because there was no "child support order" in place at that time— only an unallocated family support order.

By the time Respondent filled out his 2015 attorney registration form, the district court had entered its final orders. On the 2015 form, Respondent answered "yes" to the question of whether he was required to pay child support. Respondent explained that he provided this answer because the district court's final orders were specific as to his child support obligation. Respondent said that it was clear to him then, unlike in 2014, that he was subject to an order requiring child support payments.

### Colo. RPC 3.4(c) and Colo. RPC 8.4(d)

█ In granting the People's motion for judgment on the pleadings, the PDJ determined that Respondent violated Claim I, premised on Colo. RPC 3.4(c), which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The pleadings established that Respondent knew he was obligated to pay $3,500.00 a month in family support because he had stipulated to that amount. Respondent also failed to uphold his obligation, as he did not make the full payment in November 2013 and thereafter did not make any payments. Through this conduct, the PDJ found, Respondent knowingly contravened Colo. RPC 3.4(c). The PDJ also concluded that this same conduct breached Claim II, premised on Colo. RPC 8.4(d), which proscribes conduct that is prejudicial to the administration of justice.

The PDJ also granted the People's motion for summary judgment, determining that Respondent violated Claims III through VI, premised upon violations of Colo. RPC 3.4(c) and Colo. RPC 8.4(d). The PDJ found that Respondent knowingly violated these rules when he failed to pay $7,562.00 each month in spousal support, per the district court's final order entered on August 13, 2014. Respondent unsuccessfully moved to modify his spousal support obligations on December 18, 2014. He thus knew that the court's final order was valid and enforceable and that he was required to comply with it. The PDJ

---

39. Ex. 4.

40. Ex. 4 at 00019, 000147.

41. *See* Ex. 5.

42. Exs. S4–S5.

further concluded that Respondent's refusal to produce the required financial disclosures in his dissolution case and his failure to comply with C.R.C.P. 16.2(e) and with the district court's orders to provide discovery knowingly violated Colo. RPC 3.4(c) and prejudiced the administration of justice in violation of Colo. RPC 8.4(d).

### Colo. RPC 8.4(c)

■ The PDJ denied the People's and Respondent's motions for summary judgment premised on the People's Colo. RPC 8.4(c) claim. Thus, the Hearing Board must decide whether Respondent breached this rule when he answered "no" on his 2014 attorney registration statement to the question of whether he was currently under an order requiring him to pay child support. Colo. RPC 8.4(c) states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. To establish that an attorney violated this rule, the element of scienter—a culpable mental state greater than simple negligence—must be shown by clear and convincing evidence.[43]

Respondent admits that he was subject to the court's unallocated temporary support order and admits to answering "no" on his attorney registration statement in response to the child support query. He disputes, however, that he provided a knowingly dishonest answer. He reasons that the temporary family support was unallocated and not specific as to child support; therefore, he says, he was not obliged to disclose this order on his registration form. Respondent also argues that his counsel and the magistrate had told him that the temporary order was not a child support order, and he relied upon those statements. He also contends had he answered "yes," he would have been making an untruthful statement. Finally, he points to the Colorado Court of Appeals unpublished opinion in his divorce proceeding as support for his understanding of the temporary order.

The Hearing Board concludes that the People have not proved by clear and convincing evidence that Respondent knowingly made a misrepresentation when he filled out his 2014 attorney registration statement. Because the People did not offer the 2014 attorney registration form into evidence, we do not know the exact wording of the question posed concerning child support obligations. The specific language used could very well affect how attorneys who are filling out the form interpret the question. It is also undisputed that the temporary family support order was unallocated and did not provide for a specific child support payment. This fact was important to the district court when it declined to modify Respondent's temporary support arrearage and to the court of appeals when it affirmed the district court's decision on this issue. We also find to be valid Respondent's concern that he could have made a misrepresentation by answering the question in the affirmative. Once the district court entered its final orders, which were specific as to child and spousal support, Respondent disclosed his obligation on his 2015 attorney registration statement. Thus, under these facts, we find that Respondent's interpretation of the temporary order was reasonable. We conclude that Respondent did not knowingly make a misrepresentation on his 2014 attorney registration statement, and we decline to find that he violated Colo. RPC 8.4(c).

### III. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*")[44] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[45] When imposing a sanction after a finding of lawyer misconduct, a hearing board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may

---

43. *People v. Rader*, 822 P.2d 950, 953 (Colo. 1992).

44. Found in ABA *Annotated Standards for Imposing Lawyer Sanctions* (2015).

45. *See In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003).

be adjusted based on aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

■ *Duty:* Lawyers are officers of the court and must obey all court orders. By failing to provide required discovery and to pay court-ordered family and spousal support, Respondent flouted his obligations under the rules of a tribunal and violated his duty to the legal system that he vowed to uphold.

*Mental State:* The PDJ's order granting judgment on the pleadings and summary judgment concluded that the People had proved every element of their Colo. RPC 3.4(c) claims, which expressly required proof of a knowing mental state. In that order, the PDJ found that Respondent had knowingly failed to comply with discovery rules and with his court-ordered family support and spousal support obligations.

*Injury:* Respondent's failure to fully satisfy his family and spousal support obligations has harmed his ex-wife and his children both financially and emotionally. Ms. McQuitty testified that because Respondent failed to pay her the full spousal maintenance, she was unable to provide enough food for her children at times. She also said that she cannot stand on her own two feet financially and is still on Medicaid, which embarrasses her. Ms. McQuitty frequently has to go to court to force Respondent to comply with his obligations. This takes significant time away from her work as a real estate agent. Without spousal support, she has difficulty affording the real estate signs and lock boxes her business requires.

Respondent's conduct has also caused actual injury to the legal system. As a lawyer, Respondent is required to abide by legal rules and court orders to promote the administration of justice, yet he disregarded these obligations by declining to provide the required financial disclosures in his divorce proceeding and by failing to pay his full family and spousal monthly support obli-

gations, which necessitated additional expenditures of court resources. When lawyers avoid their court-mandated responsibilities, as has Respondent, it reflects poorly upon all lawyers and the legal system in general.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Suspension is the presumptive sanction for Respondent's misconduct in this case, as set forth in ABA *Standard* 6.22, which governs a lawyer's knowing violation of a court order or rule that results in injury or potential injury to a party or interference or potential interference with a legal proceeding.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations that may justify an increase in the degree of the sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[46] In deciding the appropriate sanctions, the Hearing Board applies four aggravating factors, one of which carries minimal weight, along with three mitigating factors, some of which merit little weight.

*Dishonest or Selfish Motive—9.22(b):* Respondent has not been dishonest; he candidly admitted that he has not paid the full monthly family or spousal support amounts. The Hearing Board does find, however, that Respondent's conduct was selfish. He evaded his responsibilities to Ms. McQuitty, his children, and the district court. The Hearing Board thus considers this factor in aggravation.

*Pattern of Misconduct—9.22(c):* The People seek imposition of this factor in aggravation, arguing that Respondent engaged in a continuing pattern of disobeying court orders. We choose not to apply this factor here. Although Respondent failed on multiple occasions to pay his full monthly support obligations, his actions reflect a continued disregard of court orders in the same case, rather than a pattern of misconduct in multiple cases.[47]

---

46. *See* ABA *Standards* 9.21 & 9.31.

47. *In re Roose,* 69 P.3d at 49 (apparently giving no weight to the aggravating factors of a pattern

*Multiple Offenses—9.22(d):* Respondent not only neglected to provide the required disclosures in his divorce proceeding, he also shunned his responsibilities to pay court-ordered support. Since Respondent did not engage in more than two distinct types of misconduct, however, we accord minimal weight to this aggravating factor.[48]

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* While Respondent's stipulation to the majority of the facts in this case demonstrates that he has acknowledged his actions, he has not admitted that he acted wrongfully and that he harmed Ms. McQuitty. We therefore give this factor some weight in aggravation.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the Colorado bar eighteen years ago, in 1998. He has substantial experience as a lawyer and should know to comply with court-mandated obligations, including discovery requirements.

*Absence of a Prior Disciplinary Record—9.32(a):* Respondent has been licensed to practice law since May 22, 1998, with no instances of discipline. We deem this a factor in mitigation.

*Full and Free Disclosure to Disciplinary Board or Cooperative Attitude Toward Proceedings—9.32(e):* The People agree that Respondent has cooperated in this proceeding. He has also made a full and free disclosure to the Hearing Board about the facts surrounding his misconduct. We therefore choose to weigh this factor in mitigation.

*Efforts to Make Partial Payments:* The aggravating and mitigating factors identified in the ABA *Standards* "are expressly intended as exemplary and are not to be applied mechanically in every case."[49] Here, we consider Respondent's effort to make partial payments toward satisfying his monthly spousal support obligations as a factor in mitigation.

### Analysis Under ABA *Standards* and Colorado Case Law

The Hearing Board is mindful of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors.[50] We recognize that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[51] Though prior cases are helpful by way of analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

Under the ABA *Standards,* the presumptive sanction for Respondent's misconduct is suspension. Colorado Supreme Court case law also supports the imposition of suspension for failure to pay child support.

In *In re Green,* an attorney knowingly failed over the course of five years to pay more than $11,000.00 in court-mandated child support and neglected to file his attorney registration statement.[52] Green had earlier appealed the child support orders, but his appeal was rejected on the grounds that "much of [Green's] inability to meet his support obligations stems from his own decisions and unwillingness to obtain work that is commensurate with his true potential earning capacity."[53] The Colorado Supreme Court suspended Green for one year and one day but held that, were Green to demonstrate within the period of suspension that he had paid his past-due child support or negotiated a payment plan approved by the appropriate

---

of misconduct or multiple offenses where an attorney's misconduct "actually involved only two separate acts, arising from the same lack of understanding, and the same misguided perception of zealous advocacy, in the same case").

48. *See id.*

49. *In re Rosen,* 198 P.3d 116, 121 (Colo.2008).

50. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

51. *In re Attorney F.,* 285 P.3d at 327 (quoting *Rosen,* 198 P.3d at 121).

52. *Green,* 982 P.2d 838 (Colo.1999).

53. *Id.* (quotation omitted).

court, he could be reinstated and placed on a three-year period of probation.[54]

In *People v. Hanks*, an attorney who willfully failed to pay child support was suspended for one year and one day.[55] There, Hanks had been ordered to pay $20,000.00 in past-due child support and $1,500.00 per month for his three children.[56] Although Hanks paid some money toward child support, he made little or no financial contribution to the child support registry over a three-year period; at the time of the disciplinary hearing, he was $55,282.62 in arrears and a finding of contempt against him had not been dismissed.[57] And in *People v. Jaramillo*, an attorney was suspended for one year and one day for violating state laws and for failing to pay court-ordered child support.[58] Because Jaramillo amassed child support arrearages of $11,296.77 over several years, making only a few payments to reduce that amount, his driver's license was suspended; Jaramillo was then involved in a car accident, and he was charged with driving with a suspended license, driving without insurance, and leaving the scene of an accident.[59]

We contrast these cases with two others imposing public censure. In the first, *People v. Primavera*, an attorney had been held in contempt for failing to pay approximately $3,000.00 in child support over a four-month period.[60] Per the court's contempt order, however, Primavera timely paid the arrearage in full prior to the disciplinary hearing, he ultimately paid attorney's fees, and the contempt citation was dismissed.[61] In the second case, *People v. Cantrell*, the Colorado Supreme Court accepted a recommendation of public censure when an attorney negligently handled client funds and failed to pay his child support.[62] Cantrell had been held in contempt when a court concluded that he

willfully failed to comply with child support orders, but the contempt citation was ultimately dismissed.[63] At the time of the disciplinary hearing, Cantrell was in compliance with the terms of his child support obligations.[64]

Like the attorneys in *Green*, *Hanks*, and *Jaramillo*, Respondent has knowingly failed to pay a significant amount of family and spousal support, with over $100,000.00 in arrearages owed to Ms. McQuitty. Unlike the attorneys in *Primavera* and *Cantrell*, Respondent is not in compliance with his court-mandated support obligations. Additionally, his conduct is more aggravated. For example, the district court determined that Respondent had continually obfuscated his finances by failing to produce required financial disclosures, and at present he owes Ms. McQuitty more than $100,000.00. Respondent defends his conduct, however, by arguing that he could not have complied with the district court's family and spousal support orders. In theory, the Hearing Board might be receptive to his argument, because we understand that a party's financial circumstances may change over time. The district court rejected this argument, however, and the Hearing Board has received no evidence that contradicts the district court's findings that Respondent had not demonstrated "a substantial and continuing change to his income" and "has consistently underpaid his financial obligations" to his ex-wife by "approximately 70% each month."[65] We have no reason to second-guess the district court's findings and find Respondent's misconduct more akin to that in *Green*, *Hanks*, and *Jaramillo* then the misconduct in *Primavera* or *Cantrell*.

Considering the presumptive sanction and the injury caused, as well as the roughly-

54. *Id.* at 839.

55. 967 P.2d 144, 145 (Colo.1998).

56. *Id.*

57. *Id.* at 145–46.

58. 35 P.3d 136, 138–39 (Colo.1999).

59. *Id.* at 138.

60. 904 P.2d 883, 884 (Colo.1995).

61. *Id.*

62. 900 P.2d 126, 127 (Colo.1995).

63. *Id.* at 127–28.

64. *Id.* at 128.

65. Ex. 5 at 8–10.

balanced aggravating and mitigating circumstances and dispositions in similar cases, we conclude that Respondent's misconduct—especially his knowing failure to pay spousal support for over a year, continuing up until today—warrants a suspension, rather than a public censure. We find that *Green* most closely parallels this case, and we adopt the discipline imposed there as fitting in this situation. We therefore suspend Respondent for one year and one day, provided that if, during that period, Respondent demonstrates by filing a verified petition that he has paid all past-due spousal maintenance or that he has negotiated a payment plan approved by the appropriate court, then he may be reinstated under the procedures outlined in C.R.C.P. 251.8.5(d).[66] If so, the remainder of his suspension shall be stayed and he shall then be placed on probation for three years. If Respondent has not filed such a verified petition within one year and one day from the effective date of his suspension, then he must petition for reinstatement under C.R.C.P. 251.29(c), and a condition of his reinstatement shall be that he has paid all past-due spousal support or that he has negotiated a payment plan approved by the appropriate court. We impose this sanction recognizing that Respondent has committed "serious professional misconduct,"[67] while also seeking a "practical and meaningful way" to motivate him "to make a good-faith effort to satisfy [his] obligations" promptly.[68]

## IV.  CONCLUSION

Respondent knows that he is obligated under court orders to pay $7,562.00 a month in spousal maintenance to Ms. McQuitty. He has knowingly disregarded this obligation, resulting in a substantial arrearage. The People established that through such conduct, Respondent violated Colo. RPC 3.4(c) and 8.4(d). The Hearing Board now concludes that the harm Respondent has caused

to Ms. McQuitty, his children, and the legal system warrants a suspension of one year and one day, provided that Respondent may seek reinstatement at an earlier time if he satisfies his court-ordered support obligations.

## V.  ORDER

The Hearing Board therefore **ORDERS:**

1.   **JACK H. MCQUITTY,** attorney registration number 29452, is **SUSPENDED FOR ONE YEAR AND ONE DAY.** The **SUSPENSION SHALL** take effect upon issuance of an "Order and Notice of Suspension."[69]

    a.   If at any time within one year and one day from the effective date of his suspension, Respondent files a verified petition and demonstrates to the PDJ that he has paid all past-due spousal support obligations or that he has negotiated a payment plan approved by the appropriate court, then he may be reinstated under the procedures outlined in C.R.C.P. 251.8.5(d). If so, he shall then be placed on probation for three years, with the condition that he shall not violate any Rules of Professional Conduct, and the remainder of his suspension shall be stayed.

    i.   If, during the period of probation, the People receive information that any condition may have been violated, the People may file a motion with the PDJ specifying the alleged violation and seeking an order that requires Respondent to show cause why the stay on the remaining part of his suspension should not be lifted and the sus-

---

66.  The People do not object to Respondent petitioning for early reinstatement under these circumstances. *See* "Complainant's Hearing Brief," dated January 26, 2016.

67.  *Primavera*, 904 P.2d at 885.

68.  *Green*, 982 P.2d at 839.

69.  In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

pension activated.[70] The filing of such a motion shall toll any period of probation until final action.[71] Any hearing shall be held pursuant to C.R.C.P. 251.7(e).

    ii.  If Respondent's probation is revoked, he will be required to serve the remaining portion of his one-year-and-one-day suspension and petition for reinstatement to the practice of law under C.R.C.P. 251.29(c).

  b.  If Respondent has not filed such a verified petition within one year and one day from the effective date of his suspension, then he must petition for reinstatement under C.R.C.P. 251.29(c). A precondition of Respondent's reinstatement shall be that he has paid all past-due spousal support obligations or that he has negotiated a payment plan approved by the appropriate court.

2.  Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3.  Within fourteen days of issuance of the "Order and Notice of Suspension," Respondent **SHALL** comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.

4.  The parties **MUST** file any posthearing motion or application for stay pending appeal with the Hearing Board **on or before Tuesday, April 19, 2016.** Any response thereto **MUST** be filed within seven days.

5.  Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a statement of costs **on or before Tuesday, April 5, 2016.** Any response thereto **MUST** be filed within seven days.

70.  *See* C.R.C.P. 251.7(e).      71.  *Id.*